IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JAIME BOWLING, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:18-CV-054-Z-BR |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DENY PETITIONER'S MOTION TO VACATE**

Before the Court is the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* filed by JAIME BOWLING ("petitioner") on March 28, 2018. (ECF 1). For the reasons set forth below, petitioner's motion should be DENIED.

I.   **FACTUAL AND PROCEDURAL HISTORY**

On February 23, 2017, petitioner was charged by Indictment with the felony offenses of Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of Methamphetamine in violation of 21 U.S.C. § 846 and Possession with Intent to Distribute 500 Grams or More of Methamphetamine and Aiding and Abetting in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) and 18 U.S.C. § 2. *United States v. Bowling,* No. 2:17-CR-10(02).[1] (CR ECF 22).

On August 16, 2017, petitioner pleaded guilty to Count Two of the Indictment. (CR ECF 62). Pursuant to the written Plea Agreement filed July 21, 2017, petitioner acknowledged the maximum penalties the Court could impose, that he understood the Court would impose the sentence after consideration of the United States Sentencing Guidelines ("guidelines") and that the guidelines were

---

[1] Record citations to petitioner's underlying federal criminal case, *United States v. Bowling*, 2:17-CR-10(02), shall be to "CR ECF #" throughout this Opinion. Record citations to documents filed in the instant habeas case will be to "ECF #."

not binding on the Court. (CR ECF 57). Petitioner also acknowledged at the hearing that he had reviewed the guidelines with his counsel but understood no one could predict with certainty the outcome of the Court's consideration of the guidelines in his case, acknowledged he would not be allowed to withdraw his plea if his sentence was higher than expected, and also that he fully understood the actual sentence imposed was solely in the discretion of the Court. (CR ECF 84 at 13–15). Petitioner averred not only that there had been no guarantees or promises from anyone as to what sentence the Court would impose (*Id.* at 14), but also that he was fully satisfied with his attorney's legal representation. *Id*. at 8.

Additionally, the Court specifically addressed the waiver of appeal, as part of the Plea Agreement. *Id.* at 15. Petitioner advised that he understood his very limited rights to appeal his conviction and sentence or challenge it through other post-conviction means. *Id.* at 15–16. Petitioner averred that his plea was freely and voluntarily made, that he was pleading guilty because he was in fact guilty, and that he fully understood that the sentence was in the discretion of the Court. *Id*. at 9.

During the Change of Plea Hearing, the Court also discussed petitioner's immigration status. Petitioner acknowledged that he was not a citizen of the United States and that he understood that a plea of guilty could result in his deportation from the United States and/or prevent him from ever becoming a citizen of the United States. *Id*. at 6, 10. Additionally, petitioner acknowledged that a plea of guilty could affect his residency in the United States and any status with immigration officials. *Id*. at 10. Petitioner was also advised of the mandatory minimum ten-year sentence for his crime, with the possibility of a maximum term of life in prison. *Id*. at 12.

A signed Factual Resume was submitted in connection with petitioner's Plea Agreement. (CR ECF 58). The Factual Resume stated:

> … on or about February 10, 2017, … Jaime Bowling, defendant, did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture and

> substance containing a detectable amount of methamphetamine …
>
> On February 10, 2017, DPS Trooper Darrin Bridges was working routine patrol on I-40 in Carson County, Texas. At approximately 10:38 a.m., Trooper Bridges stopped a 2017 Chevrolet Impala for speeding. The driver was identified as Enrique R. Stoddard and the passenger was identified as Jaime Bowling. Trooper Bridges noticed indicators of possible criminal activity. While in the process of issuing a warning ticket for speeding, Trooper Bridges engaged Stoddard in conversation. During the conversation, Trooper Bridges noticed inconsistencies with Stoddard's story about the trip.
>
> Trooper Bridges asked for consent to search the vehicle. Stoddard denied consent for the search. Trooper Bridges contacted 100th District Attorney's Office Investigator Danny Dawson and requested Investigator Dawson bring his canine partner to the scene. Investigator Dawson had his canine partner perform a free air sniff on the vehicle. The canine did alert to the odor of narcotics coming from the vehicle. A probable cause search was conducted on the vehicle. Trooper Bridges located two plastic antifreeze bottles concealed inside a piece of luggage in the trunk of the vehicle. There were other items of luggage used to keep the bottles upright, including a bag belonging to Jaime Bowling.
>
> The plastic antifreeze bottles contained liquid methamphetamine. …
>
> Jamie Bowling was read his Miranda warnings and gave a statement. Bowling stated that he and Stoddard had flown to Los Angeles, California and rented a car on February 8, 2017. Bowling stated that on February 9, 2017, he picked up liquid methamphetamine and that he was supposed to transport that liquid methamphetamine to another state. Bowling stated that in past trips, when they would convert liquid methamphetamine to crystal methamphetamine, it would yield approximately five kilograms. Bowling stated that he told Stoddard that they were transport [sic] narcotics, but that he was not going to pay Stoddard for the trip.
>
> …

(CR ECF 58 at 2–3). During his plea, petitioner acknowledged that the statements contained in the Factual Resume were accurate and that he was pleading guilty because he was guilty of the offense. (CR ECF 84 at 9, 17–19).

On October 17, 2017, a Presentence Report (PSR) calculated petitioner's total criminal history score of 1 and a Criminal History Category of I. (CR ECF 68-1 at 10). Petitioner's Offense Level was reduced by two (2) levels pursuant to USSG §5C1.2 and an additional three (3) level reduction was

given for his acceptance of responsibility and plea. *Id*. at 9. Based on a Total Offense Level of 33 and the Criminal History Category of I, the PSR recommended a Guideline Imprisonment Range of 135 to 168 months. *Id*. at 13. On November 27, 2017, petitioner's counsel filed numerous objections to the PSR, including objections to the guideline calculations. (CR ECF 78 at 1–4). Petitioner's counsel argued that the amount of methamphetamine was not properly calculated according to the relevant conduct standard. *Id*. at 1–3. Counsel argued that the proper Offense Level should have been a 29, a four-level reduction from the PSR. *Id*. at 4. Additionally, counsel argued that a downward departure from the guidelines was warranted. *Id*.

On December 7, 2017, a Presentence Report Addendum was filed, agreeing in part with some of the defendant's objections, but declining to adjust the Offense Level. (CR ECF 76-1 at 2). The PSR Addendum attributed the weight of methamphetamine at the time of the offense and the past trips admitted by the defendant combined, resulted in the Offense Level as set forth in the original PSR. *Id*. at 1–2. Additionally, the PSR Addendum stated a downward departure was not warranted based on the defendant's background. *Id*. at 3.

On January 10, 2018, the Court held petitioner's sentencing hearing. (CR ECF 79). At the hearing, the Court addressed petitioner's objections to the PSR. (CR ECF 85 at 5–14). Additionally, counsel for petitioner urged the Court to consider a minimal role reduction in sentence, and the government objected to that reduction. *Id.* at 9–11. Additionally, petitioner's counsel urged the Court to depart downward from the guidelines based on petitioner's stable, hard-working background prior to the offense. *Id.* at 14–15. The Court determined that the guideline calculations were accurate and overruled the petitioner's objections and declined to award a minimal role reduction. *Id.* at 18–20. The Court then sentenced petitioner to a 135-month term of imprisonment in the United States Bureau of Prisons, a sentence at the bottom of the guideline range without a downward departure from the

guidelines. *Id.* at 23. The Court specifically found, considering all the facts, that a downward departure would not be sufficient to adequately address the crime committed by defendant. *Id.* The Court entered Judgment that same date. (CR ECF 80).

During the Sentencing Hearing, counsel for the petitioner made it clear that petitioner's immigration status was a primary focus of this case. (CR ECF 85 at 16). Petitioner was adopted as a baby by United States citizens. *Id*. Sadly, his immigration paperwork to allow citizenship to transfer from his adopted parents was filed outside of the statutory deadline for automatic conferral of citizenship. *Id*. Petitioner's counsel urged the Court to consider that, even after petitioner served any criminal sentence imposed, petitioner would likely be held "for quite some time" by immigration officials, given the nature of his "almost" citizenship and complicated immigration history. *Id*. Further, counsel for petitioner indicated that he hired a board-certified immigration attorney to research the issue of petitioner's challenging immigration status prior to the bond hearing before the undersigned Magistrate Judge. *Id*. at 16–17. In fact, counsel for petitioner even cited the *Padilla* decision[2], stating that no one, not even the board-certified immigration attorney, could predict with certainty what immigration consequences would result from his conviction. *Id*. at 17.

Petitioner did not appeal his conviction and sentence to the United States Court of Appeals for the Fifth Circuit. On March 15, 2018, petitioner placed his motion to vacate his sentence in the prison mailing system, such motion being received and filed of record on March 28, 2018. (ECF 1 at 34). Petitioner also filed a motion for downward departure on May 22, 2018, which was denied by the sentencing judge. (CR ECF 83, 87). On June 19, 2018, the respondent filed its response in opposition to petitioner's motion. (ECF 6). Petitioner filed no reply to the response.

---

[2] *Padilla v. Kentucky*, 559 U.S. 356 (2010) (found ineffective assistance of counsel for failure to advise criminal defendant of immigration consequences of criminal plea).

## II. PETITIONER'S ALLEGATIONS

In this motion, petitioner contends his sentence is in violation of the Constitution and laws of the United States for the following reasons:

1. The sentence imposed was unreasonable and excessive under 18 U.S.C. § 3553(a), and petitioner should have received a three-level Offense Level reduction for acceptance of responsibility for his Plea Agreement.

2. Petitioner should have received a two-level Offense Level reduction because he is a deportable alien who will not receive the same treatment by the Bureau of Prisons ("BOP") as a United States citizen, and petitioner's counsel was ineffective for failing to request this Offense Level reduction.[3]

3. Petitioner was denied effective assistance of counsel in his criminal proceeding because counsel failed to explain the immigration consequences of his plea (certain deportation), in violation of *Padilla*, and petitioner claims he would have insisted on going to trial if he understood those consequences.

## III. MERITS

A motion to vacate can be decided without an evidentiary hearing if the record conclusively establishes that a defendant is not entitled to relief under Section 2255. *See United States v. Bartholomew,* 974 F.2d 39, 41 (5th Cir. 1992). For the reasons discussed below, the undersigned determines that the record conclusively establishes that petitioner is not entitled to relief.

In its response filed June 19, 2018, the respondent thoroughly and accurately briefed statutory authority and case law regarding the applicable standards of review for relief under 28 U.S.C. § 2255 proceedings, and for reviewing claims of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 689 (1984) and its progeny. *See* ECF 6 at 5–6. The Court notes its obligation to follow these clearly established standards without the need of repeating the respondent's briefing.

---

[3] Petitioner cites *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994), in support of his motion for a two-level departure. Petitioner argues that his lack of access to certain prison programs, as a deportable alien confined in a private facility, will extend his actual time served in prison unjustly and he is therefore entitled to a compensatory reduction in his sentence.

**A. Claims Non-Cognizable on Collateral Review, Waived, and Procedurally Barred**

After a defendant has been convicted and exhausted or waived any right to appeal, "a court is entitled to presume that [he] stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). A motion brought pursuant to 28 U.S.C. § 2255 is a "means of collateral attack on a federal sentence." *Cox v. Warden, Federal Detention Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990) (citation omitted). A prisoner may only move to vacate, set aside, or correct a sentence under section 2255 on the following bases: (1) the judgment was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the judgment; (3) the sentence exceeds the statutory maximum sentence; or (4) the judgment or sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Collateral attack of a conviction thus limits a movant's allegations to those of constitutional or jurisdictional magnitude. *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (citation omitted). Accordingly, relief under section 2255 is reserved for violations of "constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir.1994) (*quoting United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam)).

<u>Non-Cognizable</u>

Two of petitioner's claims in this 2255 proceeding merely constitute a challenge to his sentencing guideline calculations: his claim for a *Smith* variance and his claim that he received an excessive sentence for failure to consider his acceptance of responsibility. The Fifth Circuit distinguishes direct appeals from section 2255 motions and has historically and consistently held technical application of the guidelines does not raise an issue of constitutional dimension for purposes

of section 2255.[4] *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (misapplication of the guidelines is not a constitutional issue cognizable under section 2255); *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). Petitioner's claims of misapplication of the guidelines are not cognizable on section 2255 collateral review. Even if a sentencing court errs in calculating an advisory sentencing range, the claim is not cognizable on collateral review. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (rejecting a challenge to a career offender designation as not cognizable in section 2255 motions). Petitioner's challenges to the guideline calculations should be dismissed for failure to raise a claim cognizable on collateral review pursuant to a section 2255 motion.

Waived

In his plea agreement, petitioner waived all rights to appeal his sentence and waived any post-conviction relief available under 28 U.S.C. § 2255, including this petition. A defendant can waive his right to appeal as part of a plea agreement if the waiver is informed and voluntary. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (citing *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir. 1992). "It is up to the district court to insure that the defendant fully understands [his] right to appeal and the consequences of waiving that right." *Wilkes*, 20 F.3d at 653 (citing *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992)).

By his signed Plea Agreement, petitioner agreed:

> **Waiver of right to appeal or otherwise challenge sentence**: The defendant waives his rights, conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, to appeal the conviction, sentence, fine, and order of restitution or forfeiture in an amount to be determined by the district court. He further waives his right to contest the conviction,

---

[4] Sentencing a defendant in light of an erroneous application of a sentencing guideline does not alter the statutory boundaries for sentencing for the crime. It results in incorrect advice to the sentencing court regarding the recommended range of punishment, but it does not authorize the court to impose an otherwise inapplicable statutory mandatory minimum sentence or a higher than otherwise applicable statutory maximum. *See Mistretta v. United States*, 488 U.S. 361, 396 (1989) (explaining that the guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress"). Because a guideline provision cannot "mandate or authorize any sentence," *see Welch,* ---U.S. ---, 136 S. Ct. at 1265, an erroneous guideline calculation does not alter the range of sentencing options available to the court.

> sentence, fine, and order of restitution or forfeiture in any collateral proceeding, including proceedings under 28 U.S.C. § 2241 and 28 U.S.C. § 2255. The defendant, however, reserves the rights (a) to bring a direct appeal of (i) a sentence exceeding the statutory maximum punishment or (ii) an arithmetic error at sentencing, (b) to challenge the voluntariness of his plea of guilty or this waiver, and (c) to bring a claim of ineffective assistance of counsel.

(CR ECF 18 at 6).

During his Change of Plea Hearing, the Court specifically addressed this provision with the petitioner. (CR ECF 84 at 15). Petitioner advised that he understood his very limited rights to appeal his conviction and sentence or challenge it through other post-conviction means. *Id*. at 15–16. Petitioner averred that his plea was freely and voluntarily made and that he was pleading guilty because he was in fact guilty. *Id.* Nothing in his petition suggests that petitioner did not understand the appellate waiver signed as part of the Plea Agreement. Therefore, petitioner's appellate waiver to challenge guideline calculations (absent an arithmetic error) should be upheld, and petitioner's claims for a guideline variance or adjustment should be denied.

Procedurally Barred

"The Supreme Court has emphasized repeatedly that a 'collateral challenge may not do service for an appeal.'" *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). However, it is well-settled that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982). The only other avenue, then, is for petitioner to show the error resulted in the "conviction of one who is actually innocent." Petitioner's claims, however, do not go to the validity of his conviction at all; rather, they only go toward his sentence. Consequently, he cannot make the requisite showing. *See Murray v. Carrier*, 477 U.S. 478, 495–96 (1986).

Here, Petitioner did not appeal his conviction or sentence to the Fifth Circuit Court of Appeals. His only explanation in his petition for his failure to do so is his "ineffective lawyer … hide [sic]

these facts from me is my only excuse." (ECF 1 at 6). The alleged "facts" hidden from petitioner are the (factually inaccurate, *infra*) claim that he did not receive a three-level reduction for his acceptance of responsibility and the failure of his lawyer to raise a *Smith* argument for a two-level reduction. As such, petitioner has procedurally defaulted any claim that challenges the application of the guidelines to his sentence, absent a claim and showing of actual innocence. Thus, petitioner's challenges to his guideline calculation should also be dismissed as procedurally defaulted.

### i. Excessive Sentence

Petitioner's claim that he did not receive a three-level reduction for acceptance of responsibility is also factually inaccurate. (*See* CR ECF 68-1 at 9). Further, his claim that the Court failed to consider and appropriately apply the 18 U.S.C. § 3553(a) factors is without merit. Petitioner's arguments are unsupported by the record and do not show that his within-guidelines sentence fails to account for a factor that should receive significant weight, gives significant weight to an irrelevant or improper factor, or represents a clear error of judgment by the district court in balancing the sentencing factors. *See United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009); *United States v. Campos-Maldonado*, 531 F.3d 337, 338 (5th Cir. 2008). The district court noted that "having considered all of the statutory factors and the purposes for sentencing," the sentence was appropriate, as follows: "I've considered Counsel's arguments on behalf of his client regarding a sentence below the advisory guideline range or a variance or departure sentence. And while I am persuaded by those arguments that a sentence at the bottom of the range is sufficient, I am not persuaded that a sentence below the advisory guideline range would be sufficient based on the facts of the case." (CR ECF 85 at 23). It is clear the Court did consider these factors in sentencing the defendant. A sentencing judge is afforded great deference in weighing the section 3553(a) sentencing factors. *See United States v. Rodriguez-Bernal*, 783 F.3d 1002, 1008 (5th Cir. 2015). Thus, petitioner's claim is meritless.

### ii. Two-Level Offense Level Reduction/*Smith* Claim

Alienage may serve as a potential basis for imposing a sentence below the guideline range. *See Moreno v. United States*, No. CIV.A. 3:07-CV-0883-G, 2007 WL 2712482, at *2 (N.D. Tex. Sept. 17, 2007) (citing to the *Smith* case referenced by petitioner). The petitioner in *Moreno* was also convicted of a drug offense and also argued that his counsel was ineffective for failing to argue for a downward departure based on alienage. *Id.* at *1–2. The court found, "[t]he mere fact that defendant is not eligible for early release to a halfway house and cannot be housed in a minimum security facility is not enough to take this case outside the 'heartland' of typical cases covered by the sentencing guidelines." *Id.* (citations omitted). This Court agrees with this reasoning that petitioner must show "that the trial court would have exercised its discretion to depart downward in [petitioner's] case. [Petitioner's] own speculations about the sentencing phase of the case are not sufficient to make a *prima facie* showing that counsel could have done something which would have substantially changed his sentence." *Id*. at *3 (citing *United States v. Foote*, No. 3-99-CV-0838-R, 2001 WL 671465 at *3 (N.D.Tex. Jun. 12, 2001), *cert. denied*, No. 01-10839 (5th Cir. Nov. 16, 2001)).

Here, the Court was made well aware of petitioner's immigration status and the possible sentence-related consequences. Specifically, counsel for petitioner argued that petitioner would likely serve extra time while detained awaiting deportation, which bolstered counsel's argument for a downward departure. (CR ECF 85 at 16–17). Although petitioner seems to argue that his counsel should have specifically requested a *Smith* departure, it appears from the record that is nearly precisely what his counsel did. *See id*. Although the supporting basis for the departure now appears to be claims that petitioner lacks access to halfway house programs and other early release opportunities, there is absolutely no support for an inference that this would have altered his sentence or the considerations of the Court during sentencing. *Id.* at 23. This is also supported by the denial of petitioner's post-

judgment motion for downward departure. (CR ECF 87). Thus, petitioner's claim, otherwise waived and procedurally defaulted, is also meritless.

### B. Ineffective Assistance of Counsel: *Padilla* Claim

To merit relief on an ineffective assistance of counsel claim, a movant must demonstrate both (1) that his "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id*. at 687; *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." (citing *Strickland*, 466 U.S. at 687)).

Petitioner now claims that he would "never" have accepted a guilty plea and would have certainly proceeded to trial on both counts of the Indictment had he understood that he would almost certainly be deported as a result of his crime. (ECF 1 at 5). First, these statements are entirely contradicted by the record. Second, absent a meritorious argument that petitioner would have proceeded to trial, he cannot meet the prejudice prong of *Strickland*.

The record clearly indicates that, prior to the detention hearing, and significantly before the Plea Agreement was signed, counsel for petitioner hired a board-certified immigration attorney to consult on this case. (CR ECF 85 at 16–17). Counsel made it very clear on the record, prior to petitioner directly addressing the Court during sentencing, that no one could predict with certainty the immigration consequences of petitioner's plea–although deportation and being held for deportation was argued as very likely. *Id*. Apparently, it was a very hard-fought battle prior to the detention hearing to try to secure petitioner's status in the United States, and that battle was presumably lost prior to his Plea Agreement. *Id*. Further, it is clear from the arguments currently made

in the petition that petitioner has always understood the possible, but uncertain, immigration consequences of his plea. Thus, the Court is entirely unpersuaded by petitioner's claims that he would have proceeded to trial if, as he now alleges, he had known the immigration consequences of his plea.

In *Padilla*, the Supreme Court held that counsel's failure to advise a lawful permanent resident alien of likely deportation implicates the Sixth Amendment right to effective assistance of counsel, as set forth in *Strickland*. The Supreme Court explained:

> …informed consideration of possible deportation can only benefit both the State and noncitizen defendants during the plea-bargaining process. By bringing deportation consequences into this process, the defense and prosecution may well be able to reach agreements that better satisfy the interests of both parties.

*Padilla v. Kentucky*, 559 U.S. 356, 369 (2010). Given the unique and extreme consequence of deportation, it is incumbent on counsel to warn their clients when a guilty plea could have such an impact. *Id*. ("The severity of deportation—the equivalent of banishment or exile—only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." (internal quotation marks and citations omitted)).

A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of the *Strickland* test. A petitioner must <u>affirmatively establish</u> that but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial. *United States v. Kayode*, 777 F.3d 719, 724 (5th Cir. 2014) (citing *Carter v. Collins*, 918 F.2d 1198, 1200 (5th Cir. 1990)). This assessment, in turn, will depend in part on a prediction of what the outcome of a trial might have been. *Id*. (citing *Hill v. Lockhart*, 474 U.S. 52, 56–58 (1985)).

Here, petitioner, although he argues he would have proceeded to trial, fails entirely to show the outcome would have been different in a beneficial way. Petitioner does not argue actual innocence, does not argue he gave up suppression of evidence arguments to plead guilty, and does not argue any insufficiency of evidence on any element of the offense. Thus, proceeding to trial presumably would

13

lead to conviction on *both* counts of the Indictment, no acceptance of responsibility adjustment, *and* deportation resulting from conviction. Petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id*. at 725 (citing *Padilla*, 559 U.S. at 372). Here, that decision would not be rational. Petitioner confessed to the crime (and previous criminal infractions as part of the same enterprise), and has not proffered any reason why he would not be convicted of the crime at trial and suffer worse consequences. Thus, petitioner's claim for ineffective assistance of counsel for a *Padilla* violation is entirely without merit and should be denied.

## IV. RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States Senior District Judge that the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* filed by petitioner JAIME BOWLING be DENIED.

## V. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a file marked copy of the Findings, Conclusions and Recommendation to petitioner and to each attorney of record by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED December 28, 2020.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by

electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).